IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MICHAEL HENRY RICHARDSON, JR.,    §
                    Petitioner,    §
                                   §
v.                                 §          C.A. NO. C-08-083
                                   §
NATHANIEL QUARTERMAN,              §
                    Respondent.    §

**AMENDED MEMORANDUM AND RECOMMENDATION**
**TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is an inmate in the Texas Department of Criminal Justice,

Correctional Institutions Division, and is currently incarcerated at the George Beto

Unit in Tennessee Colony, Texas.  Proceeding pro se, on March 17, 2008 petitioner

filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, along with a

memorandum in support.  (D.E. 1, 2).  Respondent moves for summary judgment

on the grounds that petitioner's claims are without merit.  (D.E. 10).  For the

reasons stated herein, it is respectfully recommended that respondent's motion for

summary judgment be granted.

**I. JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. § 2254, which provides that jurisdiction is proper where the inmate is

confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d

959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 319th Judicial

District Court of Nueces County, Texas, and therefore, jurisdiction is proper in this

Court.  28 U.S.C. § 124(b)(6).

## II.  BACKGROUND

**A.    Procedural History.**

On July 2, 2004, a jury convicted petitioner of murder, and sentenced him to

imprisonment for life in cause No. 03-CR-2766-G.  Ex parte Richardson, No. WR-

68,836-01, at 150 ("SHA").  On June 15, 2006, the Thirteenth Court of Appeals

affirmed the conviction in an unpublished decision.  Richardson v. State, No. 13-

04-00405-CR, 2006 WL 1653375 (Tex. App. June 15, 2005) (unpublished).  On

January 12, 2007, the Texas Court of Criminal Appeals denied petitioner's

application for discretionary review.  Richardson v. State, PDR No. 1143-06.

On October 15, 2007, petitioner filed a state habeas application.  SHA at 2.

On December 19, 2007, his application was denied without written order.  Id. at

cover.  On March 17, 2008, he filed this federal petition for writ of habeas corpus

alleging ineffective assistance of counsel.

**B.    Factual Background.**

On August 13, 2003, Mark Davis was beaten to death in Corpus Christi,

Texas.  SHA at 170.  On November 19, 2003, petitioner was indicted for

murdering Mark Davis by striking him with his hands and feet, as well as a metal chair.  Id. at 150-51.  The indictment further presented that the chair was a deadly weapon.  Id. at 151.  On June 3, 2004, petitioner rejected the state's offer of a thirty-year term of imprisonment, to run concurrently with any sentence imposed as a result of his parole revocation.[1]  Appellate Record, Vol. 6, at 4.

At petitioner's trial, Josephine Ybanez testified that she had called 911 after she saw petitioner beating the victim with a chair as she drove by.  Tr., Vol. 2, at 17-28.  According to Ms. Ybanez, petitioner was yelling something about a shirt. Id. at 19.  She saw petitioner follow the victim as he tried to retreat.  Id. at 24.

Robin Bartholomew similarly testified that she had seen petitioner beat the victim with his fists and a chair from across the street.  Id. at 51-53.  After the fight, petitioner approached her, apologized for using foul language, and asked for a cigarette.  Id. at 55.  She went to a friend's house about a block away.  Id.  Thirty minutes or so later, petitioner appeared and struck up a conversation about her cousin, whom he knew.  Id. at 55-56.  She then gave petitioner a ride to another neighborhood.  Id. at 56.

Albert Mendoza testified that he had been sitting on the front porch with the

---

[1] In June 2002, petitioner was sentenced to three probated ten-year terms of imprisonment pursuant to guilty pleas on three counts of burglary of a habitation in causes No. 02-CR-849-G, No. 02-CR-785-G, and No. 02-CR-964-G.  Tr., Vol. 6, at 73.

victim on the day of the killing.  Id. at 95-99.  He explained that the victim asked

petitioner if he had his shirt.  Id. at 100.  Petitioner ignored the victim at first, but

became angry after he repeated the question.  Id. at 102-03.  Without warning,

petitioner "went ballistic" and attacked the victim.  Id. at 106.  He struck him in the

face, his head struck the wall, and he fell from the porch.  Id. at 106-07.  Petitioner

left the porch and began attacking him again.  Id. at 111-12.  He continued

attacking the victim even after he had knocked him down, and he was trying to

crawl away.  Id. at 112-13.  Petitioner broke off the attack and went next door, but

returned and began hitting the victim with a metal folding chair.  Id. at 114-15.  He

hit him around twelve times.  Id. at 130.  When petitioner stopped, the victim was

still trying to crawl away.  Id. at 117-18.  He was able to stand and walk by leaning

on the fence, but fell in the back yard.  Id. at 118-19.  Petitioner asked "What, are

you trying to get away now, dude?" and began beating him again.  Id. at 119-20.

Officer Carl Johnson, an officer with the Corpus Christi Police Department

("CCPD"), testified that the victim was awake when he arrived, and tried to stand,

but fell.  Id. at 149-50.

Eric Cantu, a firefighter and paramedic with the Corpus Christi Fire

Department, arrived on the scene after the responding officer put in a non-

emergency call for medical assistance.  Id. at 65, 67.  When he arrived, the victim

4

was lying down beside the house.  Id.  He was unresponsive, and his breathing was labored.  Id. at 70-72.  Over defense counsel's objection, Mr. Cantu explained that the other officer at the scene told him that the victim had asked to use the restroom, then became agitated and refused to talk.  Id. at 73-74.  A brief examination revealed swelling on his face, but no active bleeding or life-threatening injuries. Id. at 78-79, 90.  He loaded the victim into the ambulance and took him to the hospital.  Id. at 78.

Dr. David L. Johnson, trauma surgeon at Spohn Memorial Hospital, testified that the victim was completely unresponsive when he arrived at the hospital.  Id. at 162-63.  Tests revealed that he was suffering from massive brain swelling.  Id. at 172.  Over the next twenty-four hours, two other doctors diagnosed the victim with brain death.  Id. at 179-80.  Dr. Johnson did not think it likely that earlier treatment could have saved his life.  Id. at 181-82.  He believed that the rapidity of the swelling indicated a very significant blow, or series of blows.  Id. at 188.

Through an autopsy, Dr. Ray Fernandez, the Nueces County Medical Examiner, determined that the victim suffered from various abrasions and bruises, four fractured ribs, and a bruised left lung.  Id. at 199-200.  He also indicated that defendant displayed some defensive wounds, but no offensive wounds.  Tr., Vol. 4, at 128.  He concluded that the cause of death was blunt head trauma.  Tr., Vol. 2, at

211.

CCPD Detective Tim Rivas explained that Albert Mendoza had identified petitioner as the killer in a photo lineup. Tr., Vol. 4, at 2, 5. On August 23, 2004, he interviewed petitioner, who had turned himself in. Id. at 11.[2] Petitioner admitted to attacking the victim, but denied using the chair as a weapon. (D.E. 2, Ex. A, at 7). Detective Rivas admitted that no fingerprints were found on the chair, but did not find that unusual. Tr., Vol. 4, at 16. Katrina Aggelopolous, the CCPD's latent print examiner, testified that pressure and movement can make it impossible to recover a print from a blunt weapon. Id. at 52-53. Pamela Smith, a serologist for the Texas Department of Public Safety, testified that she found no blood on the chair. Id. at 33.

Kathy Hooper, petitioner's ex-girlfriend, testified that he came to her house the night of the murder. Id. at 58. He seemed upset, and mentioned having been in a fight earlier that day. Id. at 61. He told her that the other party had asked about a shirt, and that he "wasn't going to let nobody hit him with a bottle." Id. at 62.[3]

Chris Delia Garcia, who had also dated petitioner, testified that the victim

---

[2] The prosecutor played a videotape of that interview for the jury. Tr., Vol. 4, at 13.

[3] Detective Jason Smith testified that Ms. Hooper had not mentioned anything about the bottle in her earlier statement, and that he explained that he gave her a chance to read and correct the statement before signing it. Tr., Vol. 4, at 70-73.

rented a room from her.  Id. at 79.  After the killing, she found a broken mirror in the victim's room.  Id. at 81.

Petitioner testified, explaining that he had known Michael Davis for around four months, and considered him a friend.  Id. at 91.  On the day of the killing, he came to talk with Chris Garcia and her family.  Id. at 93.  The victim asked him if he had taken a t-shirt.  Id. at 96.  The victim then swung on him without warning, and they fought for several minutes.  Id. at 97.  He knocked the victim down, and kicked him once.  Id.  He did not, however, intend to harm the victim, and felt guilty for doing so.  Id. at 98.  He broke off the attack, and began to leave the premises.  Id.  As he walked away, the victim followed, taunting him in Spanish with a racial slur.  Although angered, petitioner continued to walk away.  Id. at 100.

The victim then pushed petitioner from behind.  Id.  At that point, he felt it necessary to defend himself.  Id.  He knocked the victim down and began to kick him.  Id. at 101.  After the victim was subdued, he crossed the street to apologize to several female observers for using foul language.  Id.

Petitioner denied ever going next door.  Id. at 102.  He claimed to have never touched a folding chair, and explained that all the witness testimony to the contrary were lies.  Id. at 109.  He clarified that the victim had a bottle of malt liquor in his

hand when he first tried to strike him.  Id. at 111.  When he left the scene, the

victim was still sitting up.  Id. at 117.[4]

During closing arguments, the prosecutor explained that she expected the

defense to focus on the issue of intent:

> You don't beat somebody over and over again, punching
> them with your fists, kicking them with your feet,
> stomping them when they're down on the ground picking
> up a chair and hurling it with as much force as you can,
> ten or twelve times, stop, go after them again, chase them
> around the back of the house and pound on them again
> and not know that you're not going to cause – that you're
> going to hurt him real bad, and not intend to hurt them,
> not intend to cause serious injury?  But that's what he
> wants you to believe.  Actually, he wants you to believe
> he never touched that chair and none of that happened
> and everyone else is lying.

Tr., Vol. 5, at 18.  Regarding the issue of self defense, and negligent homicide, the

prosecutor argued that

> Any of the defenses that he is going to try to rely on are
> going to come solely and exclusively from his words to
> you.  Because it's not borne out by any of the other
> evidence, or any of the other witnesses.  But his word is
> not worth the paper she is typing his words on.  He wants
> you to believe him, he wants you – he's saying to you,
> "Believe me.  Believe me, because I tell you so.  Forget
> what all those other lying witnesses said.  Forget what
> that kid who saw everything there said.  Forget what the

---

[4] Jesse Villareal testified to petitioner's untruthful character based on his interactions
with him as director of the New Life Fellowship.  Tr., Vol. 4, at 135.

> 911 lady said.  Forget what the lady across the street said.
> Forget those pictures that you saw, and all those marks.
> It's all lies, and I had nothing to do with that."

Id. at 20.  The prosecutor concluded that petitioner's version of events was "a tissue of lies made up by a proud, stubborn, arrogant man who thinks he can talk anybody into believing anything he says."  Id. at 23.

Defense counsel explained that "I think the issue in this case is intent."  Id. at 24.  She characterized the victim as petitioner's friend.  Id. at 25.  She also highlighted their shared experiences, and the importance of friendship between homeless people.  Id.  She went on to point out the inconsistencies between Ms. Ybanez's testimony and her prior statement to the police.  Id. at 26.  She opined that the evidence did not show that petitioner intended to kill or seriously injure the victim.  Id. at 27.  She focused on the unforeseeable brain swelling, and the fact that the victim did not appear to be suffering from a brain injury immediately after the fight.  Id. at 29-30.  Regarding petitioner's use of the chair as a bludgeon, defense counsel argued:

> We're all human beings.  Mr. Richardson is no less a
> person than any one of us.  I think the evidence shows he
> used the chair.  I think it does.  But I think Mr.
> Richardson either, number one, can't handle the thought
> that he did this.  Two, doesn't remember it.  Three,
> doesn't want to remember it.  But I think that when he
> told you up there that he didn't use the chair he really
> believes he didn't.  Because he would have to face that,

9

> that he would use a chair on his friend.  Keep that in
> mind, the daily reminders that you've killed your friend.
> Your friend you shared clothes with, food with....
>
> Another thing I want to address before I'm through, is
> this the State that says that a proud, stubborn man equals
> arrogance.  That may be true.  I don't know how you-all
> consider pride and stubbornness.  But in this situation, I
> think it explains that chair denial, because proud,
> stubborn men can also be fearful and ashamed and
> embarrassed.  And I think that's what the situation is
> here.  He didn't intend to kill him.  He didn't intend to
> hurt him real bad.

Id. at 31-33 (emphasis added).  On July 1, 2004, the jury found petitioner guilty as

charged.  Id. at 36-37.

During the punishment phase, Frank Silvas, the victim's father and an

ordained Baptist minister, described his son as non-aggressive, even meek.  Id. at

55.  Crox Quintanilla, senior chaplain of Good Samaritan Rescue Mission, testified

that the victim made "good efforts" to turn his life around, and had made progress

in the year before he died.  Id. at 63.  Carol Murphree, Executive Director of the

Good Samaritan Rescue Mission, viewed the victim as a son, and recalled that "he

just really didn't feel like he belonged to anyone except me."  Id. at 73-74.

Marcia Villagomez, petitioner's probation officer, testified that did not

report to her, as required, from June 2002, when he was put on probation, until

March 2003, when he was incarcerated to await a hearing on a motion to revoke

his probation.  Id. at 81-82.  The judge imposed a ninety-day jail sentence for

violating the terms of his probation.  Id. at 82.  After he was released in June 2003,

petitioner reported to Ms. Villagomez on June 17, 2003, but then never reported

again.  Id. at 83.

Finally, the prosecutor called witnesses to describe petitioner's three arrests

in 2003.  Joseph Piedra, a uniformed CCPD police officer, testified that he had

arrested petitioner for stealing drinks from a convenience store on June 29, 2003.

Id. at 95-98.[5]  Officer Jerry Neal testified that he had arrested petitioner and the

victim for public intoxication on August 2, 2003.  Id. at 109.  They were

passengers in a car whose driver was arrested for evasion.

Norman Smith, a security guard, testified that he found petitioner attempting

to break open parking meters in downtown Corpus Christi on March 6, 2003.  Tr.,

Vol. 6, at 15.  CCPD Sergeant Mike Delgado testified that he had arrested

petitioner for burglary of a coin operated machine, and criminal mischief, on

March 6, 2003.  Id. at 7.  Rebecca Wortham, CCPD Parking Control Supervisor,

testified that the damage by petitioner cost the city around $2,500.  Id. at 35.  Gary

Owen, who was living on the street at that time, testified to having seen petitioner

---

[5] CCPD Sergeant Joseph Christian corroborated Officer Piedra's testimony.  Tr., Vol. 5,
101-05.

break into the parking meters.  Id. at 38-39.

The jury sentenced petitioner to life in prison, and also imposed a $10,000 fine.  Id. at 68-69.  The judge revoked his probation as well, and ordered the three ten-year sentences to run concurrently with each other, but consecutive to the life sentence.  Id. at 78-79.

### III.  PETITIONER'S ALLEGATIONS

Petitioner claims that trial counsel was constitutionally ineffective because (1) she failed to object to hearsay testimony, violating his Sixth Amendment confrontation rights, and (2) she conceded his guilt during her closing argument. (D.E. 1, at 6).

### IV.  EXHAUSTION OF STATE REMEDIES

A federal writ of habeas corpus from an inmate in state custody shall not be granted unless: 1) the inmate has exhausted his legal remedies in the state courts; 2) state corrective processes are absent; or 3) circumstances render such processes insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is satisfied when the substance of each claim has been fairly presented to the highest court of the state.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999) (citation omitted).  In Texas, exhaustion may take one of two paths: (1) the petitioner may

file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals, or (2) the petitioner may file a petition for state writ of habeas corpus.  Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990) (citing Richardson v. Procunier, 762 F.2d 429, 431-32 (5th Cir. 1985)).

Petitioner's claims are exhausted because they are identical to those brought in his state habeas application.  SHA at 7-8.  Indeed, respondent concedes that petitioner exhausted his state court remedies before filing this petition.  (D.E. 10, at 2).

## V.  STANDARD OF REVIEW

### A.    Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect and objectively

13

unreasonable." <u>Morrow v. Dretke</u>, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)); <u>see</u> <u>also</u> <u>Riddle v. Cockrell</u>, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings. <u>Id.</u> at 694 (citing <u>Williams</u>, 529 U.S. at 404-05).  The Court explained:

> A federal court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principles but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

<u>Id.</u> (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the

14

Supreme] Court on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision,' and not the written order explaining that decision.'" St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable. Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion

15

that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.    Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary judgment is appropriate when there is no disputed issue of material fact, and one

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that material controverted facts preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary

judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23; <u>ContiCommodity Servs., Inc. v. Ragan</u>, 63 F.3d 438, 441 (5th Cir. 1995).

## VI.  DISCUSSION

### A.    AEDPA's Deference Applies to the State Court's Denial of Petitioner's Claims.

AEDPA's deferential standard of review applies only to claims adjudicated on the merits.  28 U.S.C. § 2254(d).  Petitioner's claims were all raised in his state habeas corpus application.  SHA at 7-8.  Based on the trial court's findings, <u>id.</u> at 144-45, the Texas Court of Criminal Appeals denied his state habeas application without written order.  <u>Id.</u> at cover.  This denial of petitioner's application is an adjudication on the merits even though the highest state court has not explained its reasoning.  <u>See</u> <u>Jackson v. Johnson</u>, 150 F.3d 520, 524 (5th Cir. 1998) ("the denial of relief serves, under Texas law, to dispose of the merits of the claim") (citing <u>Ex parte Torres</u>, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding that "denial" signifies an adjudication on the merits, while "dismissal" means the court has declined to consider the claim)); <u>see</u> <u>also</u> <u>Neal</u>, 286 F.3d at 235 (in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive") (citation omitted).

18

Thus, petitioner is not entitled to federal habeas relief unless he can demonstrate that the state court's decision was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

## B.   Standard of Review Pursuant to Strickland v. Washington.

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching." Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.), cert. denied, 127 S. Ct. 732 (2006). To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) that the deficient performance resulted in actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either. Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. He must demonstrate that counsel's representation fell below an

objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)

(citations omitted).

Under the second prong of the <u>Strickland</u> two-part test, petitioner may not simply allege, but must affirmatively prove actual prejudice, resulting from the ineffective assistance of counsel. <u>Strickland</u>, 466 U.S. at 693. Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial. <u>See</u> <u>Czere v. Butler</u>, 833 F.2d 59, 63-64 (5th Cir. 1987). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Strickland</u>, 466 U.S. at 694; <u>see</u> <u>also</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the <u>Strickland</u> test. <u>See</u> <u>Carter v.</u> <u>Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding). He must establish "actual prejudice as a result of his counsel's ineffectiveness." <u>Moody v. Johnson</u>, 139 F.3d 477, 482 (5th Cir. 1998) (citations omitted). In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief. <u>Collier v. Cockrell</u>, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); <u>see</u> <u>also</u> <u>Miller v. Johnson</u>, 200 F.3d 274, 282 (5th Cir. 2000) ("Because

21

[petitioner] failed to set forth the nature of *any* of the errors trial counsel

purportedly failed to preserve and did not assert any resulting prejudice, the district

court properly determined that these three claims of ineffective assistance were

conclusory.").  The Fifth Circuit has further held that "'[i]n the absence of a

specific showing of how these alleged errors and omissions were constitutionally

deficient, and how they prejudiced [petitioner], ... we [can find] no merit to these

claims." Miller, 200 F.3d at 282 (quoting Barnard v. Collins, 958 F.2d 634, 642

(5th Cir. 1992)).

Finally, in order to prove that he is entitled to federal habeas relief due to

ineffective assistance of counsel, petitioner must overcome the presumption of

correctness to which the state court's findings are entitled.  See Schaetzle v.

Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for

federal habeas purposes is *not* whether [petitioner made a showing under

*Strickland*, but] ... whether the state court's decision-that [the petitioner] did *not*

make the *Strickland*-showing-was contrary to, or an unreasonable application of,

the standards, provided by clearly established federal law (*Strickland*), for

succeeding on his IAC claim.").

**C.    The Texas Court of Criminal Appeals' Denial of Petitioner's Claims was not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law.**

**1.    Counsel's Failure to Object Did Not Violate Petitioner's Constitutional Rights.**

Petitioner alleges that his trial counsel's failure to object to hearsay testimony was constitutionally ineffective, and violated his Sixth Amendment right to confront witnesses.  (D.E. 1, at 6).  He explains that counsel "failed to object to testimony of witnesses the State called into as evidence [sic] that Petitioner used and exhibited a steel metal folding chair which was believed to have caused the death of Mark Davis."  (D.E. 2, at 8).  In his reply to respondent's motion for summary judgment, he clarifies she should have objected to this testimony as hearsay because no physical evidence linked him to the chair.  (D.E. 19, at 14); see also id. at 21 ("there was no evidence found on the chair, so those witness testimony's [sic] lacked credibility and trial counsel should have objected").

**a.    Petitioner's rights under the confrontation clause were not violated.**

Under Texas and Federal law, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c); Tex. R. Evid. 801(d).  Petitioner sets forth in painstaking detailed evidence and

inconsistencies that might detract from the credibility of the eyewitnesses.

See (D.E. 2, at 8-12).  However, he does not identify any objectionable out-of-

court statements that were admitted for their truth, or that violated the

confrontation clause.  See United States v. Harper, __ F.3d __, 2008 WL 1976592,

at *3 (5th Cir. May 8, 2008) (confrontation clause bars admission of absent

witness's testimony unless witness is unavailable and defense has opportunity to

cross-examine prior to trial) (citing Crawford v. Washington, 541 U.S. 36, 68

(2004)).  Moreover, trial counsel clearly cross-examined each of the three

witnesses.  See Tr., Vol. 3, at 28-43 (Josephine Ybanez); 57-62 (Robin

Bartholomew); 122-41, 144-45 (Albert Mendoza).  In fact, petitioner relies almost

entirely on the trial transcript to document the inconsistencies he incorrectly

believes constitute hearsay.  See (D.E. 2, at 8-10).  Thus, the jury was made aware

of all facts relevant to a credibility determination.  Accordingly, it is respectfully

recommended that counsel's actions did not violate his rights under the

Confrontation Clause.

> **b.    The state court's conclusion that counsel's failure to object
> was not ineffective and is not unreasonable or clearly
> erroneous.**

In his state habeas application, petitioner alleged only that "counsel failed to

object to evidence that was hearsay" without identifying the offending testimony.

SHA at 7.  The trial court found that his defense counsel's decisions not to object

were part of a reasonable trial strategy.  Id. at 144.  It concluded that petitioner had

not shown that his trial counsel's performance fell below an objective standard of

reasonableness based on prevailing professional norms.  Id.

Petitioner does not show that the state court's decision was unreasonable or

incorrect under federal law.  Morrow, 367 F.3d at 313 (citation omitted).  His

defense counsel swore that

> As to Mr. Richardson's claim that I failed to object to
> hearsay, I did object to hearsay except for when there
> was a sound strategic reason not to object.  For example,
> I did not object to Albert Mendoza's testimony about the
> conversation between Mr. Davis and Mr. Richardson
> about a t-shirt which led up to the physical fight.  I did
> not object because the trial court had already indicated in
> its ruling in limine that it would allow testimony on this
> subject, and because the testimony was relevant to show
> motive and the state of mind of the victim and defendant.
> In this instance and the few other instances where I
> decided to not object to hearsay, I also believed it would
> be a poor choice to object (1) because an objection would
> suggest to the jury that the defense was hiding
> information from the jury; (2) I was likely to be
> overruled in front of the jury, thereby losing credibility
> with the people charged with deciding Mr. Richardson's
> fate; and/or (3) the information was already in evidence
> from admissible sources.

SHA at 25; accord (D.E. 2-2, at 9).  An attorney may reasonably decide not to

object to hearsay testimony if consistent with her overall trial strategy.  See Soler

v. Ward, 281 F.3d 1278, 2001 WL 1692433, at *1 (5th Cir. Nov. 21, 2001) (per curiam) (unpublished).

Petitioner argues that counsel's strategy was unreasonable because he had already testified that he had not used the chair, and because the witness statements were supported with physical evidence. (D.E. 19, at 21). The crux of his argument is that because it was possible that physical evidence would have remained on the chair, there definitely "would have been evidence on the chair to prove that the chair is what caused those bruises" if he had actually used it. Id. Thus, the evidence had no probative value. This argument makes no sense, and counsel's strategic decision to proceed in a different manner was not unreasonable. Furthermore, petitioner does not identify the legal basis on which such an objection would succeed. Finally, as petitioner does not identify any actual hearsay, his allegations of prejudice are unsupported. Accordingly, it is respectfully recommended that the state court's conclusion was not objectively unreasonable.

### 2.    Petitioner's Claim that Defense Counsel was Ineffective for Conceding Guilt at the Punishment Phase.

Petitioner has given the Court no evidence to rebut trial counsel's sworn statement that trial counsel made a reasonable, informed strategic decision to acknowledge that petitioner hit the victim with the chair. Defense counsel outlined her general strategy for the state habeas court:

26

The state had at least three eyewitnesses who testified at trial that they saw Mr. Richardson beating Mr. Davis as alleged in the indictment.  Three eye witnesses testified that they saw Mr. Richardson using the metal chair, and the pictures of Mr. Davis showed round marks on his flesh that obviously resulted from Mr. Davis being struck by the legs of a metal folding chair.  The evidence showed that while Mr. Davis was on the ground, Mr. Richardson kicked him in the face and even continued to beat Mr. Davis as he tried to crawl away.

... Mr. Richardson rejected the [plea offer of thirty years of confinement].  Accordingly, my main strategy in defending Mr. Richardson was to acknowledge that Mr. Richardson and Mr. Davis fought over a t-shirt, but that because the two men were good friends, Mr. Richardson certainly did not intend to kill or seriously injure Mr. Davis.

SHA at 24; accord (D.E. 2-2, at 8).  In her affidavit, she then explained why she

opined that "the evidence shows he used the chair,"  Tr., Vol. 5, at 31-33:

When Mr. Richardson testified in his own defense, he described his friendship with Mr. Davis and explained that he did not intend to cause Mr. Davis death or serious bodily injury.  As I recall, Mr. Richardson testified about helping Mr. Davis prepare for job interviews, sharing clothes, and having both known the devastation of homelessness.  However, in his testimony, Mr. Richardson also denied he ever picked up the metal chair or struck Mr. Davis with it.  Mr. Richardson testified on cross examination that the three disinterested witnesses who testified they saw Mr. Richardson beat Mr. Davis with a chair were all liars.  Mr. Richardson's claim that three witnesses lied about the chair lacked credibility.  So, in the exercise of trial strategy, I argued during closing argument that Mr. Richardson must have blocked

27

out the memory of having used the chair in the manner
suggested by the evidence.  In arguing this, I described
for the jury that Mr. Richardson must live each day with
the knowledge that he inadvertently killed a good friend
in a fight, when <u>he did not mean to seriously harm or kill
his friend</u>.

SHA at 24-25 (emphases added); <u>accord</u> (D.E. 2-2, at 8-9).

Petitioner argues that counsel was unreasonable because she effectively

argued that "the defendant is guilty and members of the jury should not feel bad

about finding him guilty."  (D.E. 2, at 25).  However, had the jury accepted defense

counsel's argument that he did not intend to kill or seriously hurt his friend, they

could not have found him guilty of murder.  Moreover, counsel's strategy was

within the range of professional competence.  <u>See</u> <u>United States v. Short</u>, 181 F.3d

620, 625 (5th Cir. 1999) (counsel's decision to establish credibility with the jury

by conceding wrongdoing, but not guilt, was reasonable strategy); <u>Rushing v.</u>

<u>Butler</u>, 868 F.2d 800, 805 (5th Cir. 1989) (no ineffective assistance where

concession of less serious crime was "accurate reflection of the record"); <u>see</u> <u>also</u>

<u>Florida v. Nixon</u>, 543 U.S. 175, 192 (2004) ("counsel cannot be deemed ineffective

for attempting to impress the jury with his candor and his unwillingness to engage

in 'a useless charade'") (citation omitted).

Petitioner also argues that when his defense counsel "told the jury that there

was no reasonable doubt regarding petitioner's identity as the perpetrator of the

crime," she abdicated her role.  Id. at 27.  This argument ignores that petitioner

admitted fighting with the victim, and to kicking him in the head.  Moreover, no

evidence was introduced to suggest that the victim fought with anyone else that

day.  The killer's identity was thus not an issue at trial; the issue was petitioner's

intent.  Conceding that the chair was used did not amount to an admission of guilt

to the crime charged, because counsel attempted to negate the element of intent.

If the jury had found that petitioner did not intend to kill or seriously injure

the victim, he could not have received a life sentence under Texas law.  Tex. Penal

Code § 19.04 (recklessness is mens rea for manslaughter, a second degree felony);

§ 19.05 (criminal negligence is mens rea for criminally negligent homicide, a state

jail felony); § 12.33 (maximum term of imprisonment for second degree felony is

twenty years).  Thus, petitioner's counsel continued to act as his advocate.  See

Haynes v. Cain, 298 F.3d 375, 381-82 (5th Cir. 2002) (en banc) (explaining that

"those courts that have confronted situations in which defense counsel concedes

the defendant's guilt for only lesser-included offenses have consistently found

[them] to be tactical decisions, and not a denial of the right to counsel;" denying

claim because attorneys continued to "probe[] weaknesses in the prosecution's case

on the issue of intent" and thus did not abandon defendant) (citations omitted);

see also Underwood v. Clark, 939 F.3d 473, 474 (7th Cir. 1991) (defendant not

deprived of effective assistance where attorney concedes guilt to a lesser count if evidence is overwhelming).  Accordingly, it is respectfully recommended that petitioner's claim be denied.

### 3.    Petitioner is Not Entitled to an Evidentiary Hearing.

Petitioner also requests an evidentiary hearing.  (D.E. 1, at 14).  He argues that the state habeas court "did not determine the decisive and operative facts" necessary to deny his petition.  (D.E. 19, at 3).  He does not, however, allege any existence of any relevant facts that are not already part of the record.  See 28 U.S.C.§ 2254(e)(2).  Accordingly, it is respectfully recommended that petitioner is not entitled to an evidentiary hearing.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a

substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citing Slack, 529 U.S. at 483).

As to claims district courts reject solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate the denial of petitioner's § 2254 petition, nor find that the issues presented are adequately meritorious to deserve encouragement to proceed.  Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 10), be granted.  Furthermore, it is respectfully recommended that petitioner's request for an evidentiary hearing be denied.  Finally, it is respectfully recommended that a certificate of appealability be denied.

Respectfully submitted this 3rd day of June 2008.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO THE PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).